**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Sean Seigle,

Plaintiff,

Case No. 1:25-cv-7255-MLB

v.

Fulton County, Georgia, et al.,

Defendants.

______________________________/

**OPINION & ORDER**

Plaintiff Sean Seigle sues Fulton County, Fulton County Sheriff Patrick Labat, and four John Doe defendants for allegedly violating his constitutional rights and Georgia state law while he was in custody at Fulton County Jail. (Dkt. 1-1.) Defendants move to dismiss. (Dkt. 5.) Plaintiff opposes. (Dkt. 7) The Court grants Defendants' motion.

## I. Background

Plaintiff Sean Seigle was a pre-trial detainee at the Fulton County Jail between December 1, 2023 and February 27, 2024.[1] (Dkt. 1-1 ¶¶ 30, 67.) He alleges certain conditions at the facility during his confinement were unsafe for inmates and fostered an environment of excessive violence. (*Id.* ¶¶ 15–61.) Those conditions included routine understaffing and overcrowding, crumbling infrastructure that inmates used to craft makeshift weapons, broken cell door locks susceptible to manipulation, and inadequate supervision of detainee movements and cell doors. (*Id.*) Plaintiff claims Defendants had knowledge of these conditions but failed to abate them. (*Id.* ¶¶ 51, 60, 71, 79.)

One night during his incarceration—the date is unclear—several inmates attacked Plaintiff while he was sleeping. (*Id.* ¶ 30.) They did that "[a]t a time when [Plaintiff's] door should have been locked." (*Id.* ¶¶ 30-31.) Officials transported him to Grady Hospital where he received treated for a concussion, bruising, and abrasions. (*Id.* ¶¶ 33–34.) His

[1] It is unclear whether this represents the entire period Plaintiff was incarcerated at Fulton County Jail, but these are the only dates he alleges in the Complaint.

condition worsened. (*Id.* ¶ 37.) He was unable to stand, use his hands, form complete sentences, or maintain his balance. (*Id.*) He sought help from guards and medical staff, but they ignored his complaints. (*Id.* ¶ 39.) Eventually, someone noticed his condition and alerted non-party Lieutenant Taylor, who took Plaintiff back to the hospital where he was diagnosed with a life-threatening brain hematoma. (*Id.* ¶¶ 40-41.)

Plaintiff sued Defendants Fulton County, Sheriff Patrick Labat (the official charged with administering Fulton County Jail) and four John Doe defendants (two unknown guards and two unknown members of the medical staff). (Dkt. 1-1.) He asserts five claims against them under the Fourteenth Amendment, 42 U.S.C. § 1983, and Georgia state law. (*Id.*)

## II. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009). A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*,

556 U.S. at 678. At the stage of a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

## III. Discussion

### A. Fulton County

Fulton County moves to dismiss on the ground that Plaintiff alleges no facts specific to the County and asserts no claims against it. (Dkt. 5-1 at 5.) A local government entity—like Fulton County—is only liable under § 1983 when the "execution of [its] policy or custom . . . inflicts the [plaintiff's] injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). But Plaintiff does not name the County as a defendant in any of his five counts, makes no mention of any Fulton County policy or custom and, indeed, does not reference the County outside the case caption. (Dkt. 1-1.) In the absence of factual allegations plausibly alleging a so-called *Monell* claim—let alone a count asserting that claim—the Court dismisses Fulton County.

### B. Claims Against Fictitious Defendants

Counts I, II, and III assert Section 1983 claims against two groups of fictitious defendants—the "Deputy Defendants" and the "Medical Defendants." (*Id.* ¶¶ 66–98.) Plaintiff describes the Deputy Defendants as two unknown individuals who "participated as Fulton County Sheriff's Deputies and/or other employees of Fulton County Sheriff's Office in violations of the law alleged in [the] Complaint." (*Id.* ¶ 9.) Though unclear from the Complaint, the best the Court can tell, it seems the Deputy Defendants are unknown jail officials who were supposed to "walk the floor to make sure the [cell] doors were locked" (*Id.* ¶ 47) and/or the officials who allegedly refused his pleas for medical assistance (*Id.* ¶ 37). Plaintiff describes the Medical Defendants in a similarly non-descript fashion: "[two unknown individuals] that have participated as Medical Providers and/or other employees who provided or were appointed and/or employed to provide medical assistance on behalf of the Fulton County Sheriff's Office." (*Id.* ¶ 10.) Again, although unclear, it seems the Medical Defendants are unknown members of the medical staff who failed to provide Plaintiff proper medical care. (*Id.* ¶¶ 39, 62–65.)

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is a "limited exception" to this general rule where use of the John Doe label is, "at the very worst, surplusage" because the plaintiff's description of the defendant is "sufficiently clear to allow service of process." *Dean v. Barber*, 951 F.2d 1210, 1215–16, n.6 (11th Cir. 1992).

The "limited exception" does not apply here. Plaintiff's descriptions of the Deputy and Medical Defendants do little to narrow their identities among the many guards and medical staff employed at Fulton County Jail. The Complaint omits essential details such as when Plaintiff encountered these individuals, a physical description, or any detail that could identify these people for service. Plaintiff does not even allege the specific date of the assault, stating only that it occurred "sometime between December 1, 2023 [and] February 27, 2024." (Dkt. 1-1 ¶ 30.) That leaves Defendants—and the Court—to guess which four employees, out of likely hundreds, may have interacted with Plaintiff or supervised his cell block at some unknown time during a three-month period more than two years ago.

Plaintiff nevertheless argues the Court should allow him to proceed against the fictitious defendants because "it is clear discovery [will] uncover" their identities. (Dkt. 7-1 at 14.) Admittedly, "whether it is clear that discovery would uncover a defendant's identity is a relevant consideration when determining whether a plaintiff can pursue a claim against an unnamed defendant." *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020).[2] Given the issues discussed above, it is hardly "clear" in this case that discovery could reveal the identities of the Deputy and Medical Defendants. And Eleventh Circuit "precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity[;] [i]nstead, [Eleventh Circuit] precedent has always required an unambiguous description of a defendant that enables service of process." *Id.* Plaintiff fails to provide such a description, and the Court dismisses his claims against the Deputy and Medical Defendants.

[2] The Court recognizes *Vielma* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

### C. Claims Against Sheriff Labat

Plaintiff asserts four claims against Sheriff Labat: deliberate indifference (Count I) and failure to protect (Count II) under the Fourteenth Amendment and Section 1983; supervisory liability (Count IV); and breach of sheriff's duty under Georgia law (Count V). (Dkt. 1-1 ¶¶ 66–81, 90–105.)

#### 1. Counts I and II: Deliberate Indifference and Failure to Protect

While Plaintiff styles Count I as a deliberate indifference claim and Count II as a failure-to-protect claim, little daylight appears between them. Both allege Sheriff Labat's deliberate indifference to the general conditions at Fulton County Jail endangered Plaintiff's health and safety by exposing him to the excessive risk of inmate violence that led to his injuries.[3] (*Id.* ¶¶ 66–81.) Further, deliberate indifference and failure-to-

---

[3] Counts I and II allege the same unconstitutional conditions: "lack of adequate staffing levels, severe overcrowding, inadequate supervision, the lack of secure locking mechanisms on doors, failing to adequately supervise and monitor the movement of prisoners, failing to separate violate inmates from vulnerable detainees, prisoners' routine access to contraband weapons, not addressing the crumbling infrastructure, and the widespread corrupt practices of Sheriff and Deputies." (Dkt. 1-1 ¶¶ 69, 78.)

protect claims apply the same legal rubric, and the parties do not differentiate between the claims in their briefing. (Dkts. 5-1 at 6–13; 7-1 at 6–12); *see also Holder v. Akies*, 2023 WL 9503408, at *1 (N.D. Ga. July 27, 2023) ("Failure to protect claims are analyzed under the . . . deliberate indifference standard."). So the Court analyzes Counts I and II together.

Sheriff Labat argues qualified immunity shields him from liability for these claims. (Dkt. 5-1 at 6–14.) "Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012). The qualified immunity doctrine is generous—"it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The qualified immunity analysis begins with the threshold question of whether Sheriff Labat was "acting within [his] discretionary authority" during the events in question. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

Plaintiff argues the Sheriff was not because maintenance of Fulton County Jail—specifically maintenance of its locks, doors, and infrastructure that could be used to craft makeshift weapons—involves no discretion. (Dkt. 7-1 at 8–9.) He says that's because "there is no discretion [involved] in the function of locks, walls, and doors" and "it should go without saying" that a sheriff should not "arm detainees and leave them to fight to the death." (*Id.*) Plaintiff's argument misses the mark. In the qualified immunity context, "discretionary authority" does not refer to whether an act includes an element of choice or how difficult it is, but whether it is a type of act that falls within the scope of an official's job responsibilities. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) ("Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities."). Put differently, "when addressing the discretionary authority question, courts should ask whether the decision the official faced produced choices of action that were within the arsenal of powers with which to accomplish [his or] her goals." *Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025). In answering this question, the Court looks

to the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose [or] in an unconstitutional manner." *Holloman ex rel. Holloman*, 370 F.3d at 1266.

Even if the maintenance of Fulton County Jail's locks, walls, doors, and other infrastructure is a straightforward task—one that might not involve much "discretion" in a literal sense—it certainly falls within the "outer perimeter" of Sheriff Labat's job responsibilities. *Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025) ("If [the official's] course of action was reasonably related to, or within the 'outer perimeter' of his powers, then his action was within his discretionary authority."). As the chief jailer, Sheriff Labat had a duty to maintain the jail and that necessarily included its infrastructure. *See Chaffin v. Calhoun*, 415 S.E.2d 906, 907 (Ga. 1992) ("A [sheriff's] statutory duties are defined in OCGA § 15–16–10, and include [ ] enumerated duties such as maintaining the jail."). Putting aside whether Sheriff Labat's maintenance was constitutionally sufficient, his "arsenal of powers" must have included the authority to make decisions on aspects of the jail infrastructure—like how to maintain, repair, or replace locks, doors, and walls. *Donald*, 131 F.4th at

1264. So he acted within his discretionary authority in maintaining Fulton County Jail.

Plaintiff does not contend any of Sheriff Labat's alleged actions fell outside his discretionary authority, so the burden shifts to Plaintiff to plausibly allege Sheriff Labat violated his clearly established constitutional rights. *See Skop*, 485 F.3d at 1137. As explained, Plaintiff claims Sheriff Labat violated his Fourteenth Amendment rights by failing to protect him from, and by being deliberately indifferent to, conditions conducive to excessive inmate violence.[4] (Dkt. 1-1 ¶¶ 66–81.) To make out either claim, Plaintiff must establish (1) he was "incarcerated under conditions posing a substantial risk of serious harm;"

[4] Although failure-to-protect and deliberate indifference claims are governed by the Eighth Amendment's Cruel and Unusual Punishment Clause in the prison context, claims involving the alleged mistreatment of arrestees or pre-trial detainees in custody—like Plaintiff—are governed by the Fourteenth Amendment's Due Process Clause. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). In any event, Fourteenth and Eighth Amendment failure-to-protect and deliberate indifference claims apply the same standards, "so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Id.*; *see Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 n.4 (11th Cir. 1995) (courts consider conditions of confinement claims brought by pretrial detainees—protected by Fourteenth Amendment—under Eighth Amendment framework).

(2) Sheriff Labat had "a sufficiently culpable state of mind, amounting to deliberate indifference" to that risk; and (3) "that the constitutional violation caused [his] injuries." *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (outlining elements of failure-to-protect claim); *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (outlining elements of deliberate indifference claim). Sheriff Labat only contests the second and third elements. (Dkt. 5-1 at 7.) He says even "assuming, *arguendo*, that Plaintiff has sufficiently alleged the existence of a substantial risk of serious harm," the Complaint fails plausibly to allege he was deliberately indifferent to that risk (element 2) or that his alleged indifference caused Plaintiff's harm (element 3). (*Id.* at 7–8.) The Court agrees.

**a) Deliberate Indifference**

"A prison [or jail] official act[s] with deliberate indifference if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024). Plaintiff must plausibly allege each element to establish a violation of his Fourteenth Amendment rights. He stumbles right out of the gate. To establish "subjective knowledge," Plaintiff must allege Sheriff Labat was both

"aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] also draw the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Allegations of "imputed or collective knowledge" do not satisfy the subjective knowledge prong—Sheriff Labat "must be judged separately and on the basis of what [he] kn[ew]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Further, Plaintiff must allege Sheriff Labat had "more than a generalized awareness" of the risk that led to his injuries. *Marbury*, 936 F.3d at 1234.

There are several problems with Plaintiff's allegations of Sheriff Labat's subjective knowledge. Perhaps most glaringly, *all* those allegations are conclusory. *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (Well-pleaded allegations are accepted as true, but "conclusory allegations are not entitled to the assumption of truth."). Throughout the Complaint, Plaintiff simply assumes Sheriff Labat had knowledge of various conditions at Fulton County Jail or threats to Plaintiff without alleging any underlying facts from which the Court could reasonably draw such an inference. (*See* Dkt. 1-1 ¶¶ 16, 27–29, 50,

70, 78–79, 93); *see also Steen v. Assurant, Inc.*, 2025 WL 4114136, at *2 (N.D. Ga. Sept. 30, 2025) ("Conclusory allegations are those which express a factual inference without stating underlying facts on which the inference is based."). Take Plaintiff's allegation that Sheriff Labat "knew that Mr. Seigle was being targeted by gangs." (Dkt. 1-1 ¶ 27.) The Complaint does not allege Sheriff Labat ever encountered Plaintiff, knew where he was housed, with whom he was being housed, which inmates he interacted with, or even whether he existed. So it strains credulity to suggest Sheriff Labat could have known Plaintiff was being targeted by gangs. All of Plaintiff's other allegations of subjective knowledge similarly lack factual support. (*See* Dkt. 1-1 ¶¶ 16, 27–29, 50, 70, 78–79, 93.)

And each time Plaintiff alleges Sheriff Labat possessed certain subjective knowledge, he bundles Sheriff Labat's knowledge with that of other Defendants—including fictitious defendants—such that it is impossible to know which facts Plaintiff claims Sheriff Labat actually knew and whether he claims Sheriff Labat inferred a substantial risk of serious harm from those facts. He alleges, for example, that "Defendants were aware that as a person who was not gang affiliated and older in age,

Mr. Seigle would be seen as weak" and thus more likely to be attacked. (Dkt. 1-1 ¶ 29; see also id. ¶¶ 50 ("Sheriff and all Deputy Defendants had knowledge of the lock and door malfunctions."); 70 ("At all relevant times, Sheriff and Deputy Defendants had knowledge of the aforementioned conditions."); *Rodriguez*, 508 F.3d at 617.) Plaintiff's attempt to throw Sheriff Labat in a pot of collective knowledge does not plausibly allege his individual knowledge. But the subjective knowledge inquiry is—by nature—individualized. *See Burnette*, 533 F.3d at 1331. Plaintiff thus does not plausibly allege Sheriff Labat was subjectively aware Plaintiff faced a substantial risk of serious harm.

While the deliberate indifference inquiry could end there, the Court notes Plaintiff also fails to plausibly allege the third prong—that Sheriff Labat, despite his subjective knowledge of a substantial risk of serious harm to Plaintiff, acted in a way "that amounts to subjective recklessness." *Stalley*, 124 F.4th at 1283. The Eleventh Circuit, sitting *en banc*, recently explained that this prong asks whether an official was "actually, subjectively aware" that his "own conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1253, 1262 (11th Cir. 2024). Here, Plaintiff's

indiscriminate lumping of Sheriff Labat with other Defendants is particularly detrimental to his claims. Because Plaintiff never alleges what Sheriff Labat knew about conditions in the jail, the Court cannot tell whether he knew his "own conduct" was putting inmates like Plaintiff at risk. Since Plaintiff also includes group allegations of how Defendants allegedly acted (or failed to act) despite their knowledge of the alleged dangers, the Court also cannot discern which of *Sheriff Labat's* acts or omissions were allegedly reckless. (*See, e.g.*, Dkt. 1-1 ¶¶ 51 ("Despite having [knowledge of faulty locks and doors], Sheriff and all Deputy Defendants failed (sic) take any issues to fix the locks or otherwise address the manner in which these malfunctions were being exploited by inmates."); 71 ("Despite knowledge of these serious risks, Defendants failed to take reasonable measures to abate them."); 79 ("Despite knowledge of these aforementioned conditions, Defendants failed to take reasonable measures to abate them.").) In the absence of non-conclusory, specific allegations regarding Sheriff Labat's own assessment of Plaintiff's situation and how his conduct might impact Plaintiff, the Complaint does not plausibly allege Sheriff Labat subjectively knew his actions were putting Plaintiff at risk. *See Wade*, 106 F.4th at 1258–63.

To better understand where Plaintiff's allegations of Sheriff Labat's subjective knowledge fall short, the Court's recent decision in *Riley v. Clayton County, Georgia* is instructive. 2026 WL 613469 (N.D. Ga. Mar. 4, 2026). There, a former detainee brought a deliberate indifference claim against the county sheriff after falling victim to an allegedly excessive risk of inmate violence created by a "confluence" of dangerous jail conditions nearly identical to those alleged here: broken cell locks, makeshift weapons fashioned from deteriorating infrastructure, failures to separate violent from nonviolent inmates, overcrowding, and understaffing. *Id.* at *4. The Court found the plaintiff in *Riley* plausibly alleged the sheriff's subjective knowledge of the conditions because the complaint included internal communications to jail staff in which the sheriff implied he knew of the existence of broken locks and makeshift weapons at the facility. *Id.* at *5. These communications plausibly alleged the *sheriff's* personal, subjective knowledge of the conditions that the plaintiff challenged.

To be sure, plaintiffs are neither expected nor required to attach evidence such as internal jail communications to their complaints. But *Riley* illustrates the type of factual mooring necessary to allege a

supervisory official's subjective knowledge in a non-conclusory manner. A plaintiff challenging his conditions of confinement must provide *some* factual indication, beyond his bare say-so, plausibly suggesting the official was aware of both the conditions at issue and that his or her actions or inactions exposed inmates to a substantial risk of harm. Plaintiff fails to do so here. He provides no factual allegations permitting a reasonable inference that Sheriff Labat knew of the alleged conditions at the jail, much less that he knew his own actions and inactions were responsible for them. Instead, Plaintiff simply assumes both of those propositions to be true. This is a far cry from the complaint in *Riley*. While Plaintiff need not allege Sheriff Labat's knowledge with the same level of certainty as the plaintiff in *Riley*, he must provide enough support to "nudge[] [his] claim across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In sum, the Complaint does not plausibly allege Sheriff Labat was subjectively aware of a risk of serious harm to Plaintiff from the conditions at Fulton County Jail or that Sheriff Labat acted with subjective recklessness in the face of such knowledge. Accordingly,

Plaintiff fails on the deliberate indifference element of his claims in Counts I and II.

**b) Causation**

Beyond those shortcomings, Counts I and II also fail on the final element—causation. Plaintiff must plausibly allege Sheriff Labat's "acts or omissions were the cause—not merely a contributing factor" of the constitutional deprivation. *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). That means drawing a "causal link" both between Sheriff Labat's "allegedly deliberately indifferent acts and omissions and the excessive risk of violence" and "between the excessive risk of violence and his injury." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995). Plaintiff has not drawn either connection.

As explained, Plaintiff does not allege which of Sheriff Labat's acts or omissions caused conditions conducive to excessive violence. All Plaintiff alleges—in conclusory fashion—is the conditions existed, all Defendants knew about them, and they failed to act. (*See* Dkt. 1-1 ¶¶ 15–16, 44–61, 69–72, 78–80.) What's missing are allegations explaining how any of Sheriff Labat's acts or omissions caused the unconstitutional conditions or allowed them to persist. *See LaMarca*, 995 F.2d at 1538.

Plaintiff also fails to draw a causal link between the allegedly unconstitutional conditions at Fulton County Jail and his injuries. *See Hale*, 50 F.3d at 1584. Plaintiff alleges he faced a substantial risk of serious harm—inmate attacks—arising from understaffing, overcrowding, easily rigged locks, guards' failure to ensure doors were secured, inmates' access to improvised weapons made from crumbling jail infrastructure, and inadequate inmate supervision. (Dkt. 1-1 ¶¶ 69, 78.) But based on Plaintiff's sparse description of the assault, none of these conditions appears to have contributed to his injuries. (*Id.* ¶¶ 30–34.) Plaintiff does ***not*** allege the jail was understaffed at the time of his assault; supervision of his cell was inadequate; he was housed in an overcrowded unit; his cell door lock was not functional; guards failed to check his cell door lock that night; or his assailants used weapons made from crumbling jail infrastructure. As one significant example, he alleges that, at the time of his attack, the cell door should have been locked (*id.* ¶ 31) but does not allege the lock was broken, that someone had disabled the lock, or anything like that. Absent such allegations, the Court cannot conclude there is a causal link between any of the alleged conditions at Fulton County Jail and the injuries Plaintiff suffered there.

The Court gives Plaintiff one final opportunity to allege plausibly these Counts. If Plaintiff choses to do this, he must allege—in a non-conclusory manner—facts plausibly demonstrating that Sheriff Labat had subjective knowledge of the allegedly unconstitutional conditions at Fulton County Jail, identify the factual basis supporting that inference, and explain how those conditions caused his alleged injuries. Conclusory allegations and group pleadings will not suffice.

**2. Supervisory Liability**

Count IV asserts a supervisory liability claim against Sheriff Labat. (Dkt. 1-1 ¶¶ 90–98.) "The standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022). "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between

the actions of a supervising official and the alleged constitutional deprivation." *Id.* at 1360.

Plaintiff only pursues the "personal participation" route to supervisory liability. (Dkts. 1-1 ¶ 94; 7-1 at 9–10.) He contends Sheriff Labat is liable for personally participating in the creation and maintenance of the allegedly unconstitutional conditions at Fulton County Jail and, in turn, its excessive risk of violence. (*Id.*) But, as explained, the Complaint lumps Sheriff Labat with other Defendants and contains no non-conclusory allegations explaining which of *his* acts or omissions produced the alleged unconstitutional conditions. Without that information, Plaintiff fails to show Sheriff Labat personally participated in the constitutional violation alleged in Count IV.

Count IV is also redundant of Counts I and II and likely not a proper supervisory liability claim. Supervisory liability requires a supervisor to directly participate in the unconstitutional conduct of his or her subordinates or otherwise take some action that causes his or her subordinates to act unconstitutionally. *See Cottone*, 326 F.3d at 1360. But Plaintiff does not contend Sheriff Labat's actions caused his subordinates to act in an unconstitutional manner. (Dkt. 1-1 ¶ 94; Dkt.

7-1 at 9–10.) And to the extent the Complaint alleges actions by Sheriff Labat's subordinates violated Plaintiff's constitutional rights—by ignoring his pleas for medical assistance and failing to adequately supervise his cell block on the night of the assault—it does not allege Sheriff Labat personally participated in those violations. (Dkt. 1-1 ¶¶ 30–43, 62–65.) Rather, Count IV merely alleges Sheriff Labat was deliberately indifferent to the same conditions listed in Counts I and II, making no mention of any acts by his subordinates. Without allegations of any underlying constitutional violation by Sheriff Labat's subordinates, Count IV is just a repackaging of Plaintiff's deliberate indifference and failure-to-protect claims. *See Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) ("There can be no supervisory liability . . . if there was no underlying constitutional violation by [a subordinate].")

**3. State-Law Claim**

Finally, Plaintiff brings a state-law claim against Sheriff Labat in Count V for allegedly breaching various duties under O.C.G.A. § 42-4-4. (Dkt. 1-1 ¶¶ 99–105.) Having dismissed Plaintiff's federal claims, however, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim at this time. *See Raney v. Allstate Ins. Co.*, 370

F.3d 1086, 1089 (11th Cir. 2004) ("We [ ] encourage[] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") If Plaintiff chooses to amend, he may reassert his state law claim in the amended complaint.

## IV. Conclusion

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. 5). The Court, however, Court permits Plaintiff to file an amended complaint addressing the pleading deficiencies identified in Counts I and II. If Plaintiff elects to do so, he must file that amended complaint (addressing only those Counts) within 30 days from the date of this Order. If he chooses not to do so, the Court will direct the Clerk to close this case. The Court **DIRECTS** the Clerk to submit this matter if Plaintiff fails to file an amended complaint by the above-mentioned deadline.

**SO ORDERED** this 31st day of August, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE